# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH M. ABADIE AND AMY ABADIE | CIVIL ACTION |
| VERSUS | NO: 17-6705 |
| MADERE AND SONS MARINE SERVICES, LLC, ET AL | SECTION: "S" (5) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment on Seaman Status** filed by plaintiffs, Joseph M. Abadie and Amy Abadie (Rec. Doc. 68) is **DENIED**.

## BACKGROUND

This matter is before the court on a motion for summary judgment on seaman status filed by plaintiffs, Joseph and Amy Abadie.

Plaintiffs allege that on July 19, 2016, plaintiff Joseph Abadie ("Abadie") was employed by defendants, Madere and Sons Marine Services, LLC ("Madere") and/or Deep South Oilfield Construction, LLC ("Deep South"). Abadie was assigned to work as the captain of the M/V MAMMA MIA, a crew boat in navigation owned and operated by Madere and Deep South. Abadie was instructed to sail the M/V MAMMA MIA to a production platform in the Main Pass Block 49 Field in Louisiana state territorial waters.

When the vessel arrived at the production platform, Abadie was informed by the platform well site supervisor, defendant Craig Gautreaux, that the vessel had to take on a tote tank containing liquid oilfield waste and weighting approximately 4,600 pounds from the platform

and to take it to shore. Abadie advised Gautreaux that the tote tank was too big and heavy to be safely offloaded from the production platform onto the M/V MAMMA MIA, but Gautreaux insisted on using the M/V MAMMA MIA to do the job.

Geautreaux operated the production platform's crane to lower the tote tank onto the stern deck of the M/V MAMMA MIA. During the process, the tote tank swung toward the vessel's bow, striking Abadie and pinning him against the bulkhead between the stern deck and the wheelhouse. Abadie alleges that he sustained multiple injuries as a result of the accident, including bruises and abrasions and injuries to his spine, shoulder and connective joints, tissues and nerves.

On July 13, 2017, plaintiffs filed this action against, inter alia, Madere and Deep South, seeking damages for the injuries Abadie allegedly sustained as a result of the accident, and alleging that Madere and Deep South are liable for negligence under the Jones Act, 46 U.S.C. § 30104, et seq., and for the unseaworthiness of the M/V MAMMA MIA under the general maritime law. Plaintiffs filed an amended complaint alleging that their claims are maritime claims that arise under Rule 9(h) of the Federal Rules of Civil Procedure.

Plaintiffs now seek summary judgment on the question of seaman status, arguing that there is no issue of fact bearing on that question. They specifically cite the deposition testimony of Madere company owner Chad Madere, in which he stated that he "guessed" that during the years that Abadie worked on vessels under common Madere ownership and control, he spent at least 30% of his time on vessels. His work aboard the vessels included vessel navigation/operation, deckhand duties, rigger duties and construction barge (vessel)

superintendent in charge of barge operations.

Defendants oppose, arguing that a factual dispute exists as to whether he spent 30% or more of his work time abouard vessels and whether he was a member of each vessel's crew.

## APPLICABLE LAW

*Summary Judgment Standard*

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir.1991); Fed. R. Civ. Proc. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir.1991).

*Seaman Status under the Jones Act*

The Jones Act provides that a "seaman injured in the course of employment ... may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. The plaintiff bears the burden of establishing seaman status. Becker v. Tidewater, Inc.,

335 F.3d 376, 390 n. 8 (5th Cir. 2003). The Jones Act does not define "seaman." See id. Determining "whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact and it is usually inappropriate to take the question from the jury." Id. at 386. However, the court may take the question from the jury by granting summary judgment or a directed verdict when the undisputed facts demonstrate that the maritime worker clearly does not meet the criteria for seaman status. Alexander v. Express Energy Servs. Operating, L.P., 784 F.3d
1032, 1034 (5th Cir. 2015).

"Though the Jones Act does not define 'seaman,' Congress has elsewhere defined it as the 'master or member of any crew of any vessel." Naquin v. Elevating Boats, L.L.C., 744 F.3d 927, 932 (5th Cir.2014) (quoting Chandris, Inc. v. Latsis, 115 S.Ct. 2172, 2183 (1995)). In Chandris, the Supreme Court of the United States test established a two-pronged test for determining whether a maritime employee is a seaman under the Jones Act. 115 S. Ct. at 2189–90. First, the employee's duties must "contribute to the function of the vessel or to the accomplishment of its mission." Id. Satisfying this prong of the seaman test is relatively easy because the individual "need only show that he does the ship's work." Naquin, 744 F.3d at 933 (quoting Becker, 335 F.3d at 387–88). Second, the employee "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." Chandris, 115 S.Ct. at 2189–90. The claimed connection to a vessel or fleet of vessels must be "temporally, more than fleeting, and, substantively, more than incidental[,]" because the fundamental purpose of the substantial connection requirement is "to

4

separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." Naquin, 744 F.3d at 933 (quoting and citing Chandris, 115 S. Ct. at 2190–91).

In determining whether an employee has a substantial connection to a vessel or an identifiable fleet of vessels under common ownership in navigation, the Supreme Court has determined that "[a] worker who spends less then about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." Chandris, 115 S. Ct. at 2191. The Court explained that the 30% rule of thumb is merely " a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases. As we have said, '[t]he inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it.'" Id. (quoting McDermott Int'l, Inc. v. Wilander, 111 S. Ct. 807, 818 (1991)). The 30% benchmark refers to the time that the maritime worker actually spends working on the vessel or group of vessels. Alexander, 784 F.3d at 1037. "When a group of vessels is at issue, a worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels, every one of which was under his defendant-employer's common ownership or control ." Roberts v. Cardinal Servs., Inc., 266 F.3d 368, 377 (5th Cir . 2001); see also Naquin, 744 F.3d at 933 (citing Harbor Tug & Barge Co. v. Papai, 117 S. Ct. 1535, 1542 (1997); Bertrand v. Int'l Mooring & Marine, Inc., 700 F.2d 240, 245–46 (5th Cir.1983)). When an employee's duties are divided between land and vessels, seaman status is determined in the context of the entire employment with his employer. Barrett v.

Chevron, U.S.A., Inc., 781 F.2d 1067, 1075 (5th Cir. 1986).

*1. Contribution to the Function of the Vessel or to the Accomplishment of its Mission.*

To show that he contributes to the function of the vessel or to the accomplishment of its mission, the plaintiff need only show that he "do[es] the ship's work." In re Endeavor Marine, Inc., 234 F.3d 287, 290 (5th Cir. 2000). In Chandris, the Supreme Court of the United States explained that: "The Jones Act's protections, like the other admiralty protections for seamen, only

extend to those maritime employees who do the ship's work. But this threshold requirement is very broad: All who work at sea in the service of a ship are **eligible** for seamen status." 115 S. Ct.

at 2184 (emphasis in original).

Abadie worked aboard Madere vessels navigating and operating them, performing deckhand duties and rigger duties, and on occasion, acting as superintendent in charge of barge operations. Thus, while on the Madere vessels, Abadie clearly did the ship's work. Accordingly, the first prong of the Chandris test is met.

*2. Connection to a Vessel (or an Identifiable Group of Vessels) in Navigation that is Substantial in Duration and Nature*

To be a Jones Act seaman, a plaintiff must have a connection with a vessel or an identifiable fleet of vessels. Id. at 2190. If the plaintiff asserts a connection to an identifiable fleet

of vessels, the vessels must be under common ownership or control. St. Romain v. Indus.

Fabrication & Repair Serv., Inc., 203 F.3d 376, 379 (5th Cir. 2000).

In the present case, it is not disputed that Abadie had a connection to the Madere vessels, including the M/V MAMMA MIA, which he was on when he was injured, and that the Madere vessels were in navigation. However, the parties dispute whether his connection to the vessels was substantial enough in duration to establish seaman status. As previously noted, the benchmark for duration is that a worker must spend about 30% of his time in the service of a vessel in navigation. Chandris, 115 S. Ct. at 2191.

In the present case, the evidence is conflicting on this point. In his deposition, president Chad Madere testified as follows:

> Q: [W]hat percentage of [Abadie's] time when he was working for the companies that you own or have an ownership interest, did he work on a vessel as opposed to land or a platform?
>
> A: I would say–
>
> > Mr. Lee:
> > Are you guessing?
> > The Witness:
> > I'm guessing
> > Mr. Lee:
> > Okay
> > The Witness:
> > Yes, I'm guessing at this.
>
> EXAMINATION BY MR. GRACE:
>
> Q: But you were his employer for four or five years. you must have a feel for how much time he would work on a vessel versus land right?
>
> A: Yes.
>
> Q: And what percentage would that be?

A: If I could guess, in ratio, maybe 30 percent.

Q: 30 percent on a vessel or 30 percent on land?

A: 30 percent on a vessel.

Id., Exh. A, p. 49:3-50:3.

Thus, Madere's testimony was an estimate, which put Abadie's vessel time right at 30 percent.

Abadie also testified in his deposition that he worked on vessels over 30% of the time, and submitted summaries for the time period between the beginning of March and the end of July 2016, listing total time worked, with hours worked on vessels broken out, and which reflect substantial time worked on vessels. Rec. Doc. 68, Exh. D (plaintiff's logs). However, because his status must be determined in the context of his entire employment, a two-month snapshot is not conclusive.

Additionally, at points, plaintiff's deposition testimony conflicts with his logs. For instance, for July 18, 2019, plaintiff reported in his log that he worked on a vessel 13.5 hours. In contrast, he testified that on that day, once he and Gautreaux arrived at the platform, they walked around the platform, confected a work plan for the following day, and removed a 250 gallon tote tank from the rig. Id., Exh. B, p. 26: 21-27:1-2. Thus, Abadie's testimony regarding time spent working on the platform is at odds with his report that he spent 13.5 hours on July 18 aboard a vessel. On July 19, 2016, plaintiff reported that he spent 12 hours on a vessel. However, in his deposition he states that once they arrived at the platform, after a 45 minute boat-ride, they began cleaning off the platform for release, which "took us a while." Id., Exh. B, p. 33:22- 34:12).

On July 20, 2016, Abadie lists six hours of time spent on a vessel. In contrast, his

deposition testimony states that he was driving a truck and hauling docks down the road all day. Id. at p. 48:16-49:20; p. 87:11-23. These discrepancies cast doubt on whether plaintiff's reported time on vessels is accurate, and whether he did in fact spend over 30% of his time on vessels. In addition, in support of their opposition, defendants have submitted payroll records spanning July 2015 to May 2016. A review of this documentation reflects both significant land-based and vessel-based work, but standing alone does not establish what percentage of time that Abadie worked on vessels. These facts, and the equivocal nature of Chad Madere's estimate of Abadie's time on vessels, all compel the conclusion that in this case, seaman status is a fact issue for the jury. Accordingly,

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment on Seaman Status** filed by plaintiffs, Joseph M. Abadie and Amy Abadie (Rec. Doc. 68) is **DENIED**.

New Orleans, Louisiana, this  23rd  day of August, 2019.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**